Commonwealth *v.* Dolny, Appellant.

242

Argued March 18, 1975. Before Watkins, P. J., Jacobs, Hoffman, Cercone, Price, Van der Voort, and Spaeth, JJ.

*Alexander A. DiSanti,* with him *Richard, Brian, DiSanti & Hamilton,* for appellant.

*F. Ned Hand,* Assistant District Attorney, with him *William H. Lamb,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., June 24, 1975:

The appellant, Richard J. Dolny, was indicted[1] for the statutory crimes of extortion[2] and bribery,[3] and the common law crimes of blackmail, conspiracy, solicitation of a bribe, and misfeasance and nonfeasance in office.

Trial began on September 25, 1973. At the conclusion of the Commonwealth's case, a demurrer to the charges of blackmail, extortion and solicitation of a bribe was sustained. The other charges were submitted to the jury, which acquitted appellant of bribery and conspiracy and convicted him of malfeasance[4] and nonfeasance in office. Appellant's motions for new trial and in arrest of judgment were denied by the court en banc on November 22, 1974. On December 10, 1974, appellant was sentenced to pay a $500.00 fine plus the costs of prosecution, to make restitution, and to undergo imprisonment for a minimum of three and a maximum of twelve months.

The instant appeal was taken from the judgment of sentence. Appellant has raised eight objections which he feels warrant a new trial. We find no merit in these contentions, and will affirm.

Appellant first contends that the evidence was insufficient to sustain his conviction. In testing the sufficiency

---

1. The indictment was returned in Chester County, but the trial was conducted in Berks County following the granting of a change of venue by the Pennsylvania Supreme Court with the consent of the Court of Common Pleas of Chester County.

2. The Penal Code, Act of June 24, 1939, P.L. 872, §318 (18 P.S. §4318), repealed, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa. C.S. §4702).

3. The Penal Code, Act of June 24, 1939, P.L. 872, §303 (18 P.S. §4303), repealed, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa. C.S. §4701).

4. The verdict slip taken by the jury to its deliberation incorrectly read "malfeasance" although the indictment charged appellant with "misfeasance." The effect of this clerical error will be discussed in the body of this opinion, infra at p. 246.

of the evidence, we must review the testimony in a light most favorable to the verdict winner, *Commonwealth v. Palmer,* 229 Pa. Superior Ct. 1, 323 A.2d 69 (1974), and where the verdict of the jury is supported by the record, we will not overturn the conviction. *Commonwealth v. Zapata,* 447 Pa. 322, 290 A.2d 114 (1972). So viewed, the evidence supports the jury's conclusion that appellant, as the Chief of Police of Phoenixville, permitted the illegal activities of Thomas Mastrangelo (Timmy), a known bookmaker and gambler, to continue from 1967-1970, without interference by the police department.

Testimony revealed that since 1951, Timmy had owned and operated a cigar store called the "Blue Jay" in Phoenixville. At the rear of the store, a gambling operation was conducted. Appellant visited the store two or three times a week when he was a patrolman, and occasionally placed a bet. When he became a sergeant, appellant increased the number of his visits to two or three times a day. He continued to place an occasional bet and accepted free cigarettes.

In 1966, appellant became the Acting Chief of Police. In an attempt to become the Chief, he drove to the Blue Jay, and asked Timmy to speak to several influential people, including Paul Mastrangelo (Paul) about the promotion. Timmy agreed to do so, took two $20.00 bills from his pocket and laid them on the car seat. Appellant said, "Thank you." Three months later, in January of 1967, appellant became the Chief of Police. Paul testified that he visited appellant shortly thereafter and told him that Timmy wanted to start crap games. In February of 1967, crap games began at Timmy's store, with the Chief's personal knowledge.

At approximately that time and continuing for six to eight weeks, Timmy gave one of his employees fifty dollars weekly, accompanied with the instruction to deliver the money to Paul and tell him it was from Timmy. Paul, in turn, was to give it to the Chief.

In April of 1967, Timmy began to give money directly to Paul, who turned it over to the appellant. The amount was $200 a month plus an additional $300 at Christmas. Paul gave the money to appellant at the Trio Restaurant, which he operated, by placing it in a bag containing sandwiches ordered by appellant. On at least one occasion, this procedure was witnessed by Betty Cooper, an employee of the restaurant. Payments were made on a regular basis until August of 1968, when Timmy was raided by the State Police. Thereafter, the payments were reduced in amount, except for the $300 "Christmas bonus." During this time, Timmy's gambling establishment was never raided by the Phoenixville Police Department, although it was investigated by the State Police.

Additional evidence established that before Mr. Dolny became Chief of Police, several raids were conducted at the Blue Jay. The District Justice testified that on two occasions, Chief Dolny presented evidence to the magistrate which indicated he had probable cause to search the Blue Jay. As a result, search warrants were issued and given to appellant. However, neither warrant was executed or returned to the magistrate. The evidence introduced by the Commonwealth was corroborated by several witnesses, and was clearly sufficient to sustain the jury's verdict.

Appellant next contends that his conviction must be overturned because it was based on a crime for which he was not indicted. Appellant was indicted for the common law offense of misfeasance and nonfeasance in office, but was convicted of malfeasance and nonfeasance in office. The verdict was the result of a clerical error, in that the verdict slip sent out with the jury incorrectly stated the charge against appellant as "malfeasance and nonfeasance in office." The jury was correctly instructed of the law related to misfeasance, however, and malfeasance was never mentioned in the charge. We believe that appellant suffered no prejudice by this clerical error, and will affirm.

The legal definitions of misfeasance and malfeasance in office are somewhat different. "Misfeasance in office" has been defined as "[t]he performance by a public officer in his official capacity of a legal act in an improper or illegal manner. . . ." *Ballentine's Law Dictionary* 806 (3d ed. 1969). And see *Black's Law Dictionary* 1151 (4th ed. 1968), which states, "[b]ut 'misfeasance' is often used in the sense of 'malfeasance' . . ."

At 1109, *Black's Law Dictionary* defines "malfeasance" as ". . . the commission of some act which is positively unlawful. . . . Comprehensive term including any wrongful conduct that affects, interrupts, or interferes with the performance of official duties. . . ."

As can be seen, these definitions are distinguishable, but the difference is technical and not substantive. The courts of Pennsylvania, as well as respected commentators, have used the terms interchangeably. In *Commonwealth v. Peoples*, 345 Pa. 576, 579, 28 A.2d 792, 794 (1942), the Pennsylvania Supreme Court defined "misfeasance in office" as "either the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive: *McNair's Petition*, 324 Pa. 48; *Commonwealth v. Hubbs (No. 2)*, 137 Pa. Superior Ct. 244." However, the case cited by the *Peoples* court, *i.e.*, *McNair's Petition*, defined "malfeasance in office" as ". . . breach of a postive statutory duty or . . . the performance of a discretionary act with an improper or corrupt motive. . . ." *McNair's Petition*, 324 Pa. 48, 55, 187 A. 498, 501 (1936).

That the terms are often used to describe the same conduct is further noted by Rollin M. Perkins in his hornbook, *Criminal Law* (2d ed. 1969) at 487-88:

"The distinction between malfeasance in office and misfeasance in office is much less sharp in the actual cases than it is in legal theory, and since the reference is not to two different offenses, but merely to two different modes of committing the offense, the courts

have had little occasion to indulge in hairsplitting discussions of the problem. The distinction can be tested by assuming a county commissioner whose duties included the letting of contracts for public buildings and other work needed for county purposes, and who let a certain contract for the corrupt purpose of enriching a friend. If the contract was one which should not have been let at all the misconduct was malfeasance in office, whereas if the work was needed in the public interest, but the commissioner dealt only with his friend instead of offering the project for competitive bidding, as required by law in the jurisdiction, it was a case of misfeasance in office. Since, however, nothing is involved other than the use of legal labels it is better to employ some such term as 'misconduct in office' or 'official misconduct' than to labor the distinction between 'malfeasance' and 'misfeasance.' " (footnote omitted)

We find that the phrases "malfeasance in office" and "misfeasance in office" are used interchangeably to describe the same conduct. Appellant, therefore, was not prejudiced by the technical discrepancy between the indictment and the verdict,[5] for both proscribed a certain course of conduct described by our Supreme Court as "the breach of a positive statutory duty or the performance by a public official of a discretionary act with an improper or corrupt motive." *Commonwealth v. Peoples, supra; McNair's Petition, supra.*

Appellant further contends that the trial judge inadequately instructed the jury as to the elements of misfeasance and nonfeasance in office. The sufficiency of this part of the charge was not raised before the jury retired

---

5. We note that appellant's counsel also used the terms interchangeably. For instance, he phrased one question: "Should not appellant's conviction of *misfeasance* and nonfeasance be set aside. . . ." (Appellant's Brief at 1, 17) (emphasis added). Appellant was convicted of *malfeasance.*

or in post-trial motions and, therefore, will not be considered on appeal. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Watlington*, 452 Pa. 524, 306 A.2d 892 (1973).

Appellant also asserts that his conviction of malfeasance and nonfeasance in office cannot be sustained because he was acquitted of bribery and conspiracy. Appellant cites as authority for his contention the Act of June 24, 1939, P.L. 872, §1104 (18 P.S. §5104), *repealed*, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1 (18 Pa.C.S. §105). That Section provides:

> "In all cases where a remedy is provided or duty enjoined, or any thing directed to be done by the penal provisions of any act of assembly, the direction of said act shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act into effect."

We are unable to agree that the statutory crime of bribery proscribes the same conduct as the common law offense of misfeasance, malfeasance and nonfeasance in office. Misfeasance, malfeasance and nonfeasance in office may be proved whether or not the offender accepted a monetary payment for his action. A conviction of bribery, however, may only be sustained where the evidence establishes that the offender promised, contracted or agreed, "for the payment, delivery, or alienation of any money, goods or other thing, . . . to obtain or influence the . . . behavior of any . . . officer or employe of this Commonwealth, or of any political subdivision thereof. . . . Any . . . officer . . . who shall accept or receive, or agree to accept or receive such bribe, is guilty of receiving a bribe. . . ." Act of June 24, 1939, P.L. 872, §303 (18 P.S. §4303).

Consequently, the statute relied upon by appellant is inapposite to the instant case. Moreover, there was sufficient evidence in this case for the jury to have believed

that appellant deliberately, and with an improper motive, failed in his duty to prosecute a known gambler or to raid his place of operation. The jury found that there was not sufficient proof that appellant was guilty of bribery. However, its finding that appellant withheld criminal process with an improper or corrupt motive was amply supported by the evidence.

Even were we to agree with appellant that the jury's findings were inconsistent, this court has stated on many occasions that an inconsistent verdict is not cause for granting a new trial when the evidence is sufficient to support the conviction returned by the jury. *Commonwealth v. Jackson*, 230 Pa. Superior Ct. 386, 326 A.2d 623 (1974); *Commonwealth v. Procopio*, 200 Pa. Superior Ct. 226, 188 A.2d 773 (1963); *Commonwealth v. Parrotto*, 189 Pa. Superior Ct. 415, 150 A.2d 396 (1959). And see *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971).

Appellant further asserts that he is entitled to a new trial because the court's instructions to the jury included a statement that appellant had an interest in the outcome of this case. The record establishes that the court's charge was correctly stated:

"I told you that you are the sole judges of the credibility of the witnesses, and that means their believability or reliability. How did they impress you? How did each one, in turn, impress you, as he or she stood on the witness stand to testify, on direct and cross-examination? Was the testimony forthright? Did it impress you as being the endeavor of that witness to tell only the true facts of the case, or did you find from some of the witnesses, that they perhaps told you a preconceived story or fabricated story in order to suit the particular interests of that witness? *You have the right to consider which of the witnesses have an interest in the outcome of the case. Mr. Dolny has a decided interest.* Obviously, he is interested in

the form of your verdict; whether it will be guilty or not guilty. How as to the other witnesses? *Having determined which of the witnesses are interested or have an interest in the outcome of the case, it doesn't mean that you should disregard that testimony, but it should ring a cautionary note in your minds, so that you scrutinize the testimony of interested witnesses with special care,* in order that you receive only the true facts and reject any testimony which might have been colored, consciously or otherwise, to suit the interest of that witness." (NT 395-96) (emphasis added).

It was not error for the court below to advise the jury that it must pass upon the credibility of witnesses, including appellant, and in so doing, to consider the interest of the witnesses in the outcome of the case. *Commonwealth v. Tauza,* 300 Pa. 375, 150 A. 649 (1930).

The next contention raised by appellant is that he is entitled to a new trial because the lower court refused to permit him to review materials subpoenaed from the Pennsylvania Crimes Commission pursuant to a motion for pretrial discovery. The record reveals that appellant *was* afforded the opportunity to review the materials following an *in camera* inspection by the trial judge, even though his motion was not submitted in conformity with Pa.R.Crim.P. 310.

Pa.R.Crim.P. 310 requires all applications for pretrial discovery to be made at least five days before trial is scheduled to begin. Appellant did not make the motion until the week of September 17, 1973, although trial was originally scheduled to begin in April of 1973. Despite appellant's noncompliance with the Rule, however, the trial judge did allow his counsel to review the requested material in chambers. Appellant's counsel had the information available for purposes of cross-examination. Moreover, after he reviewed the material, he was given the opportunity to recall any witness he chose, so that he

could elicit further testimony on cross-examination. The trial judge afforded counsel every opportunity to utilize the information acquired through the Crimes Commission records. Appellant cannot claim prejudice as a result of the procedures employed by the lower court.

Appellant's remaining contentions are refuted by the record, and need not be discussed.

Judgment of sentence affirmed.