545 A.2d 890

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Roderick LLOYD, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 9, 1987.

Filed June 15, 1988.

Reargument Denied Aug. 25, 1988.

190

Jenny Steinen, Assistant District Attorney, Philadelphia, for appellant.

Laurie Montgomery, Assistant District Attorney, Coatesville, for Com., appellee.

Before WIEAND, KELLY and HESTER, JJ.

WIEAND, Judge:

The principal issue in this appeal concerns the prosecuting attorney's use of peremptory challenges to remove five out of six black persons who had been drawn as prospective jurors to hear a criminal case. The trial court determined that the challenges had been exercised for reasons which were racially neutral and directed that the jury be sworn. After hearing the evidence, the closing arguments of counsel, and the instructions of the court, the jury found Roderick Lloyd, who is black, not guilty of theft by unlawful taking and receiving stolen property but guilty of robbery, aggravated assault, simple assault, and criminal conspiracy. Post-trial motions were denied, and Lloyd was sentenced to serve two consecutive terms of imprisonment, each of which was for not less than one year nor more than two years. In addition to the peremptory challenge issue, Lloyd argues (1) that his conviction of robbery was inconsistent with the finding that he was not guilty of theft; (2) that the trial court erroneously instructed the jury on the adverse infer-

ence to be drawn from flight to avoid prosecution; and (3) that the trial court's instructions on accomplice liability were inadequate.

■ Appellant argues that if he was not guilty of theft he cannot be found guilty of robbery. This argument is faulty for two reasons. In the first place, inconsistent jury verdicts are not a basis for relief. The reasons therefor were explained by this Court in *Commonwealth v. Shaffer*, 279 Pa.Super. 18, 420 A.2d 722 (1980), as follows:

> The fault with appellant's argument is that "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Carter*, 444 Pa. 405, 408, 282 A.2d 375, 376 (1971), quoting *Commonwealth v. Parrotto*, 189 Pa.Super. 415, 422, 150 A.2d 396, 399 (1959). When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, "the court looks upon [the] acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Id. Accord: Commonwealth v. Strand*, 464 Pa. 544, 547, 347 A.2d 675, 676 (1975). Thus, consistency in a jury's verdicts in a criminal case is unnecessary, provided there is sufficient evidence to support the convictions the jury has returned, *Commonwealth v. Stegmaier*, 247 Pa.Super. 159, 371 A.2d 1376 (1977); *Commonwealth v. Dolny*, 235 Pa.Super. 241, 342 A.2d 399 (1975); *Commonwealth v. Jackson*, 230 Pa.Super. 386, 326 A.2d 623 (1974), and inconsistency in verdicts affords an accused no cause for relief, even though it may be difficult to reconcile the verdicts, *Commonwealth v. Kwatkoski*, 267 Pa.Super. 401, 406 A.2d 1102 (1979).

*Id.*, 279 Pa.Superior Ct. at 21–22, 420 A.2d at 724. See also: *Commonwealth v. Maute*, 336 Pa.Super. 394, 485 A.2d 1138 (1984); *Commonwealth v. Riley*, 330 Pa.Super. 201, 479 A.2d 509 (1984); *Commonwealth v. Graves*, 310 Pa.Super. 184, 456 A.2d 561 (1983); *Commonwealth v. Maxwell*, 280 Pa.Super. 235, 421 A.2d 699 (1980). As long as the evidence

was sufficient to support a conviction for robbery, the jury's verdict of not guilty on the charge of theft does not entitle appellant to any relief.

In evaluating the sufficiency of the evidence we determine:

> whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson,* 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984).

■ During the trial of the charges against appellant, the victim testified that appellant and his co-defendant, Shannon Styer, had beaten him, ripped off his pants, and taken money from his pockets. Appellant, while admitting to beating the victim, denied that he or Styer had taken any money. The victim's testimony was sufficient to support the verdict. Its credibility as well as the explanation offered by appellant were for the jury. It could believe all, some or none of the testimony offered by the parties. See: *Commonwealth v. Smith,* 502 Pa. 600, 604, 467 A.2d 1120, 1122 (1983); *Commonwealth v. Campbell,* 353 Pa.Super. 178, 184, 509 A.2d 394, 397 (1986); *Commonwealth v. Taylor,* 324 Pa.Super. 420, 424, 471 A.2d 1228, 1229–1230 (1984).

■ There is a second reason why appellant's argument cannot prevail. Contrary to the basic assumption on which his argument rests, the verdicts were not necessarily inconsistent. It is not an essential element of robbery that there be a completed theft. It is enough that force was used during an attempted theft. Thus, in the instant case, a jury could conceivably have found that appellant committed the crime of robbery even though he was unsuccessful in obtaining the victim's money.

■ Appellant next complains that the trial court erred when it instructed the jury that flight to avoid prosecution permitted an inference of consciousness of guilt. This was error, he contends, because there was no evidence that he had fled from the crime scene. This issue, however, has not been preserved for appellate review. When the trial court concluded its charge to the jury, an inquiry was made to counsel as to whether there were "[a]ny further suggestions or corrections or deletions or anything." Appellant's counsel responded in the negative. By failing to object and thereby calling this alleged error to the attention of the trial judge, appellant waived any objection to the court's instruction on flight to avoid prosecution. See: *Commwealth v. Rounds*, 510 Pa. 524, 527, 510 A.2d 348, 349 (1986); *Commonwealth v. Quarles*, 361 Pa.Super. 272, 276, 522 A.2d 579, 580–581 (1987); *Commonwealth v. Fisher*, 342 Pa.Super. 533, 541, 493 A.2d 719, 723 (1985); *Commonwealth v. Larkins*, 340 Pa.Super. 56, 67, 489 A.2d 837, 842 (1985); *Commonwealth v. Rineer*, 310 Pa.Super. 241, 249, 456 A.2d 591, 595 (1983). See also: Pa.R.Crim.P. 1119(b); Pa.R.A.P. 302(b).

■ For similar reasons appellant will not be heard to complain about the trial court's instructions on accomplice responsibility. After the trial court's jury instructions had been delivered, appellant did not object in any way to the instruction on accomplice liability. After the jurors had been deliberating for some time, they returned to the courtroom to request additional instructions on the difference between an accomplice and a conspirator. The trial judge asked counsel: "[W]hat do you want me to tell them as to how the accomplice relates to conspiracy?" Appellant's counsel replied, "[d]efine it as it was defined before." Under these circumstances, appellant cannot complain about the court's instructions as to accomplice liability.

When the jury inquired further whether the difference between conspiracy and accomplice liability was an agreement to commit a crime, the trial court gave an affirmative answer without explanation. At this point, defense counsel

asked the trial court to elaborate on the matter of intent. The trial court declined to explain the difference further. Although appellant does not suggest that the trial court's answer was erroneous, he contends that the court should have offered a more extensive explanation. We disagree. The trial court had already discussed with the jury the issue of accomplice liability via instructions which appellant had found satisfactory. The trial court did not abuse its discretion by declining further elaboration.

During the jury selection process, the prosecuting attorney peremptorily challenged two white persons and five of six black persons from the panel of prospective jurors. Another black person was successfully challenged for cause because she was acquainted with one of the defendants. As a result, the jury which was sworn to try the case consisted of eleven whites and one black. Appellant objected that the prosecuting attorney had exercised his peremptory challenges in a racially discriminatory manner in violation of the equal protection clause of the Fourteenth Amendment as interpreted by the Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). See also: *Commonwealth v. McCormick*, 359 Pa. Super. 461, 519 A.2d 442 (1986). The trial court thereupon summoned counsel to side-bar where the prosecuting attorney was given an opportunity to explain the peremptory challenges exercised by the Commonwealth. After these explanations had been offered—they were not rebutted— the trial court held that the Commonwealth's exercise of peremptory challenges had been racially neutral and non-discriminatory. On appeal, it is argued that the reasons given by the prosecuting attorney were inadequate to rebut a prima facie violation of the equal protection clause.

In *Batson v. Kentucky*, the United States Supreme Court stated:

Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full

peremptory character of the historic challenge, we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. See *McCray v. Abrams,* 750 F.2d [1113], at 1132 [CA2 1984]; *Booker v. Jabe,* 775 F.2d 762, 773 (CA6 1985), cert. pending 85–1028. But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption-or his intuitive judgment-that they would be partial to the defendant because of their shared race. Cf. *Norris v. Alabama,* 294 U.S. [587], at 598–599, 79 L.Ed. 1074, 55 S.Ct. 579 [583–584 (1935) ]; see *Thompson v. United States,* [469] U.S. [1024], [1025], 83 L.Ed.2d 369, 105 S.Ct. 443 [444 (1984) ] (Brennan, J., dissenting from denial of certiorari).... The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." *Alexander v. Louisiana,* 405 U.S. [625], at 632, 31 L.Ed.2d 536, 92 S.Ct. 1221 [1226 (1972) ]. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." *Norris v. Alabama, supra* [294 U.S.], at 598, 79 L.Ed. 1074, 55 S.Ct. 579 [583–584]. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Id.* 476 U.S. at 97–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88–89. (footnotes omitted).

Of the five blacks peremptorily challenged in the instant case, the prosecuting attorney explained that two black males had been challenged because they were young and

unemployed and, in the case of one of them, because he had a beard. A third black person was stricken because she was from Coatesville, where the crime had been committed, and also because she knew one of the witnesses, a fact which she conceded might have an effect on her decision. The two remaining blacks who were challenged peremptorily, according to the prosecuting attorney, had been seated on either side of the juror who had been challenged for cause and had been observed talking, laughing and joking with this juror. One of the two had also been observed alternatively dozing and making faces during voir dire. The other had also been from the Coatesville area. The prosecuting attorney explained his fears that these two jurors had learned about the case during their discussions with the juror who had been excused for cause. He explained further that it was his general practice to exclude from criminal juries those prospective jurors who were unemployed. He said that in this case he had intentionally set out to select a jury consisting of older people who did not reside in the Coatesville area. The trial judge found these reasons adequate to rebut appellant's prima facie case. He repeated his findings in his post-trial opinion, where he said:

I held at that time and state again that I viewed the Commonwealth's actions in its use of preemptory [sic] challenges as permissible trial tactics. (N.T. 6/17/86, p. 7).

The Commonwealth has met its burden and come forward with a neutral explanation for its challenge of black jurors as required by the Supreme Court in *Batson*. Its use of preemptory [sic] challenges does not warrant reversal of the defendant's convictions.

Appellant argues on appeal that even though the prosecuting attorney's reasons appear on their face to be racially neutral, in fact they were discriminatory. The same criteria, he argues, were not applied to prospective jurors who were white. Specifically, he argues that two unemployed whites were left on the jury and also a white woman who

lived in the Coatesville area. These might well be telling arguments if they were supported by the record. In fact, however, the record does not support these averments. Appellant has not supplied us with a transcript of voir dire, and the only record now before us is the transcript of the side-bar conference which was made a part of the record on appeal at the request of the Commonwealth. Therefore, we cannot accept appellant's assertions regarding other jurors. It is well settled that an appellate court cannot properly consider averments of fact appearing only in a party's brief and which are not a part of the record. See: *Commonwealth v. Stanton*, 294 Pa.Super. 516, 440 A.2d 585 (1982); *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981). See also: *Commonwealth v. Young*, 456 Pa. 102, 317 A.2d 258 (1974).

Whether reasons given by the prosecuting attorney are bona fide and sufficient to rebut a prima facie showing of discriminatory practices in the exercise of peremptory challenges must necessarily be vested in the sound discretion of the trial court. It is the trial court which hears the questions asked during voir dire and which can observe first hand the prospective jurors and the method of their selection or rejection. The trial court can also detect in a way not necessarily available to a reviewing court any discriminatory patterns and whether racially neutral considerations have been applied equally to all members of a panel of prospective jurors.

In order to rebut the defendant's showing, the prosecutor need not show a reason rising to the level of cause. *There are any number of bases on which a party may believe, not unreasonably, that a prospective juror may have some slight bias that would not support a challenge for cause but that would make excusing him or her desirable. Such reasons, if they appear to be genuine, should be accepted by the court, which will bear the responsibility of assessing the genuineness of the prosecutor's response and of being alert to reasons that are pretextual.* See, e.g., *People v. Hall*, 35 Cal.3d 161, 197

(197 Cal.Rptr. 71, 75, 672 P.2d 854, 858 (1983) (en banc) (reasons proffered by prosecutor for peremptorily excusing blacks were equally applicable to whites not excused; held, defendant's prima facie showing not rebutted). If the court determines that the prosecution's presentation is inadequate to rebut the defendant's proof, the court should declare a mistrial and a new jury should be selected from a new panel.

*McCray v. Abrams*, 750 F.2d 1113, 1132 (2d Cir.1984), vacated and remanded, 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986), appeal dismissed, No. 84–2026 (2d Cir. October 23, 1986) (emphasis added).[1]

 As a general rule, therefore, the primary responsibility for assessing the genuineness of the prosecutor's reasons is vested in the trial court, and that court's findings must be given due deference by a reviewing court. Only if those findings are unsupported by the record or appear to be unreasonable or arbitrary in the face of clear evidence to the contrary will the trial court's findings be disturbed. In the instant case, the trial court found that the prosecuting attorney's reasons for exercising his peremptory challenges were genuine and racially neutral. These findings are supported by the limited record which has been made available to us. Under these circumstances, we will not interfere with the trial court's findings.

The judgment of sentence is affirmed.

KELLY, J., files a concurring opinion.

1. In response to a petition for certiorari, the Supreme Court vacated and remanded *McCray v. Abrams* to the Court of Appeals for the Second Circuit for further consideration in light of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *Allen v. Hardy*, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986) (per curiam). On remand, the parties stipulated that the appeal would be withdrawn by the State of New York. The withdrawal of the appeal did not operate to withdraw the opinion of the Court of Appeals in *McCray v. Abrams,* and the Court of Appeals considers *McCray* to be a correct statement of the law. See: *Roman v. Abrams*, 822 F.2d 214, 225 (2d Cir.1987).

KELLY, Judge, concurring:

I join in the majority's opinion except with respect to its disposition of appellant's allegation that the prosecution exercised its peremptory challenges to discriminate on the basis of race contrary to the mandate of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). As to the disposition of that issue, I concur in the result.

Upon careful review of the limited record presented for review, I have concerns regarding the manner in which the *Batson* claim was treated in the trial court. No determination was made by the trial court as to whether appellant had presented a *prima facie* case so as to require a response by the Commonwealth to the allegation of discriminatory use of peremptory challenges. Rather, the prosecution offered its response without waiting for such a determination. (N.T. 6/17/86 at 3).

Following the prosecution's statement of its purported reasons for its peremptory challenges, the following exchange occurred:

MR. KANE: Your Honor, again, there [are] 26 people that we are actually looking at and eight of them are black. Five are gone now and it is a greater percentage of what is shown in the whole jury panel and I think that the ultimate reason is, was because they are black and everybody can make faces at me and that doesn't mean I will necessarily get rid of them.

MR. CARMODY: She was also discussing the case with the juror who knows the Defendant.

THE COURT: All right.

MR. KANE: I don't know how you would know that.

MR. CARMODY: Not discussing the case but openly talking with her and fratenizing [sic] with that juror.

MR. KANE: There are a lot of people talking and I think that we can say that right now and I think the ultimate issue is we are entitled to a jury of our peers and I don't care if the witnesses are black or green.

THE COURT: That is not what the case you cited says and it just says that once you are from an identifiable minority group and the state removes members of that group, they better have a good reason for it. *And there is nothing in what Mr. Carmody said that would indicate anything other than trial tactics on his part as the reason for the removal of the blacks. So your motion is denied.*

(N.T. 6/17/86 at 6–7). (Emphasis added). What is disturbing about this excerpt is that the trial court appears to have simply accepted the statements of the prosecutor at face value without making an independent assessment of whether the proffered reasons were legitimate and genuine rather than merely pretextual. I am of the opinion that the trial court must make a specific decision upon this issue. *Accord State v. Slappy*, 522 So.2d 18, 22 (Fla.1988) ("a judge cannot merely accept the reasons proffered at face value, but must evaluate those reason as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable, and second, not a pretext"); *Wiltz v. State*, 749 S.W.2d 519, 520 (Tex.App. 1988) (rejecting prosecution's claim that proffered reasons must be accepted at face value), *following remand* 746 S.W.2d 303 (Tex.App.1988).

Nonetheless, I agree that the record presented on appeal is wholly inadequate to provide meaningful appellate review of appellant's claims of pretext. Consequently, I agree with the majority that appellant's claim must fail. Even after *Batson*, discriminatory *animus* must be proven rather than merely asserted or assumed. Appellant has failed to preserve an adequate record from which we could conclude he has proven discrimination in this case. Hence, I concur in the disposition of this issue despite the aforementioned concerns.