J-S45029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAHYAN HARRIS | |
| Appellant | No. 1897 EDA 2013 |

Appeal from the Judgment of Sentence of January 28, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0015135-2009

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                 **FILED SEPTEMBER 23, 2014**

Kahyan Harris appeals his December 13, 2011 judgment of sentence, following his convictions for second-degree murder, robbery, criminal conspiracy, and possession of an instrument of crime ("PIC").[1]  In relevant part, Harris challenges the weight and sufficiency of the evidence presented at trial by the Commonwealth, and Harris also claims that the trial court erred in admitting unfairly prejudicial evidence.  We affirm.

In its opinion issued pursuant to Pa.R.A.P. 1925(b), the trial court summarized the factual and procedural history of this case as follows:

_____

[*]     Former Justice specially assigned to the Superior Court.

[1]     18 Pa.C.S. §§ 2502(b), 3701, 903, and 907, respectively.

The evidence admitted at trial established that on March 25, 2009, Darryl Marks [("the Decedent")] was shot multiple times with a .38/.357 caliber weapon. [The Decedent] was found lying face down on the 4500 block of N. 19th Street in Philadelphia by his friend[,] Thomas Upshaw[,] and his daughter's mother, Sakinah Davis.

Thomas James Upshaw, III, testified that he knew [the Decedent] for approximately [thirty] years. Mr. Upshaw helped the [D]ecedent run his barbershop and also sold small quantities of drugs for him. Mr. Upshaw stated that he knew that there were drugs stored at 4530 N. 19th Street, but he was unaware of the quantity or where they were kept.

On March 25, 2009, Mr. Upshaw and the [D]ecedent were closing up the barbershop and went to 4530 N. 19th Street to get supplies. The [D]ecedent kept the supplies at the house, because they would go missing when kept at the barbershop. The [D]ecedent went upstairs to use the bathroom. Mr. Upshaw heard the phone ring and then the toilet flush. There was a knock on the door, and the [D]ecedent yelled down, "[t]hat's probably Sakinah, let her in." Mr. Upshaw opened the door, and two males wearing black hoodies and jeans tried to push their way into the house. Mr. Upshaw tried closing the door but was unable to shut the door fast enough. The two males entered the house.

The first male (later identified as Brandon Huggins) put a gun in Mr. Upshaw's face as the second male (later identified as [Harris]), held the [D]ecedent against the wall and said, "[y]ou know what it is, give up the money." The [D]ecedent swung at [Harris], pushed him to the side and ran out of the front door; [Harris] ran after him.[2] After they both ran out of the house, Huggins turned and aimed his gun at Mr. Upshaw's face. Mr. Upshaw heard three (3) gunshots from outside; he heard a "click" from the gun pointed at his face. The gun [held by Huggins] did not fire. He heard someone outside say, "I didn't get anything, let[']s get out of here." [Huggins] then turned and ran out of the house. Once outside, Mr. Upshaw saw the [D]ecedent on the ground; Sakinah was standing over him. When the police arrived, Mr. Upshaw gave an officer a description of the two men.

2  During the tussle between the [D]ecedent and [Harris, Harris'] hoodie moved away from his face and Mr. Upshaw was able to get a good look at his face and neck.

Mr. Upshaw testified that he did not [initially] recognize either of the males.  Once home, he remembered tattoos containing writing around the area of [Harris'] neck.  When he was giving his statement to the police on the night of the shooting, Mr. Upshaw did not mention any tattoos because he stated that his thoughts were not exactly clear at the time.  He did talk to the [D]ecedent's brother[,] Thomas Marks, a few days later and gave him a description of the two men and of the tattoos; he told Thomas one tattoo appeared to be a tear drop [sic] under the eye.  Mr. Upshaw stated that he identified [Harris] because of his facial hair and the tattoo and that he had observed [Harris'] entire face in the vestibule.  Mr. Upshaw also positively identified [Huggins] as the person who held a gun in his face.  All identifications were based on facial features, a beard and a tattoo; Mr. Upshaw stated that he remembered [Harris].

\*　　\*　　\*

[Harris] was arrested . . . on June 9, 2009.

Trial Court Opinion ("T.C.O."), 8/13/2013, at 2-7 (footnotes, citations omitted).

On December 13, 2011, after a jury trial, [Harris] was found guilty of murder of the second degree, robbery, criminal conspiracy, and PIC.  On January 28, 2013, for the conviction of murder of the second degree[, Harris] was sentenced to life imprisonment without parole.  Concurrent terms of [ten] to [twenty] years of imprisonment were imposed on the convictions of robbery and criminal conspiracy.  No further penalty was imposed on the conviction of PIC.[1]

1  Prior to sentencing, [Harris] entered pleas of guilty to murder of the third degree, criminal conspiracy, and PIC on bill of information CP-51-CR-0011046-2009.  The Commonwealth and [Harris] negotiated a concurrent sentence of [twenty] to [forty] years of incarceration.  On bills of information CP-51-CR-0008171-2009 and CP-51-CR-0002180-2010, [Harris] entered pleas of guilty to [two]

- 3 -

counts each of robbery and criminal conspiracy. The Commonwealth and [Harris] negotiated a concurrent sentence of [ten] to [twenty] years of incarceration. On bill of information CP-51-CR-0005102-2012, [Harris] entered pleas of guilty to aggravated assault and PIC. The Commonwealth and [Harris] negotiated a concurrent sentence of [five] to [ten] years of incarceration. These pleas are not a part of [Harris' instant] appeal.

*Id.* at 1-2.

On February 6, 2013, Harris filed a timely post-sentence motion challenging the weight of the evidence. On May 31, 2013, the trial court entered an order denying Harris' motion. On June 21, 2013, Harris filed a timely notice of appeal. On June 26, 2013, the trial court directed Harris to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On July 13, 2013, Harris timely complied. On August 30, 2013, the trial court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Harris raises the following three issues for our consideration:

I. Is [Harris] entitled to an arrest of judgment on the charge of [m]urder in the [s]econd degree and all related charges where the evidence is insufficient to sustain the verdict?

II. Is [Harris] entitled to a new trial as the verdict is not supported by the greater weight of the evidence?

III. Is [Harris] entitled to a new trial where the court admitted irrelevant evidence which was unfairly prejudicial to [Harris] in the form of a letter allegedly written by him but where the letter itself was not relevant to any issue or if relevant, should have been precluded by Rule 403?

Brief for Harris at 3.

Harris first challenges the sufficiency of the evidence offered at trial to prove him guilty of robbery, and, by extension, second-degree murder.

- 4 -

"The Commonwealth did not produce sufficient evidence to establish that there was ever a robbery. In that there was no robbery, and in that there was no other predicate felony, there can be no basis for a finding of Murder in the Second Degree." *Id.* at 7. We disagree.

When examining a challenge to the sufficiency of evidence, our legal standard of review is well-established:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)). "A person is guilty of robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S. § 3701(a)(1)(ii). Further, "[a] criminal homicide constitutes murder of the second degree when it is committed while

defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(b). "Perpetration of a felony" is defined as "engaging in or being an accomplice in the commission of, or an attempt to commit, or flight after committing, or attempting to commit robbery, rape, or deviate sexual intercourse by force or threat of force, arson, burglary or kidnapping." 18 Pa.C.S. § 2502(d).

With specific regard to sufficiency of the evidence in the context of robbery, this Court has held that "[i]t is **not** an essential element of robbery that there be a completed theft. It is enough that force was used during an attempted theft." ***Commonwealth v. Lloyd***, 545 A.2d 890, 892 (Pa. Super. 1988) (emphasis added). Furthermore, we have stated the following with regard to what must be proved to sustain a robbery conviction:

> The Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the trheat posed by an assailant and whether he reasonably placed a victim in fear of "immediate serious bodily injury." The threat posed by the appearance of a firearm is calculated to inflict fear or deadly injury, not merely fear of "serious bodily injury." A factfinder is entitled to infer that a victim was in mortal fear when a defendant visibly brandished a firearm.

***Commonwealth v. Alford***, 880 A.2d 666, 676 (Pa. Super. 2005) (quoting ***Commonwealth v. Hopkins***, 747 A.2d 910, 914-15 (Pa. Super. 2000)).

In relevant part, Harris argues that the Commonwealth did not prove that he acted with the requisite specific intent to commit a robbery. Harris

- 6 -

asserts that Huggins' testimony failed to demonstrate the existence of a conspiracy: "If one reads the [testimony of Huggins],[2] there is only talk about going into the house and a subsequent shooting; there is no talk about an agreement to a robbery or the actual commission of a robbery or trying to commit a robbery." Brief for Harris at 9. We disagree.

Harris' claim misrepresents the testimony adduced at trial. Harris claims that the testimony indicates that Harris possessed no specific intent to commit a robbery. However, in the portion of the testimony relied upon by Harris, the Commonwealth recited Huggins' initial statement to police, in pertinent part, as follows:

> I was walking around the neighborhood and I saw [Harris]. He told me to go with him. [Harris] said, we about to get money. I asked [Harris] how, and [Harris] said, don't worry, you'll see. I asked him where we were going, and he said, you'll see. Then we got into a car. I don't know who[se] car it was, but [Harris] was driving. Then [Harris] drove to the block where we went into the house, and [Harris] parked the car. Then [Harris] gave me a little gun while we were still in the car and he told me to put a hoody on too. Then we walked down to a house in the middle of the block and [Harris] knocked on the door. A little man answered the door, and [Harris] told me to grab him. [Harris] saw the other guy in the back and [Harris] went after him, and [the other guy] gave [Harris] a little tussle. Then the guy tried to run out the door, and [Harris] shot him down.

_____

[2]     Although Harris claims that this testimony is from Marks, the testimony at trial regarding the conspiracy, or alleged lack thereof, that is referenced by Harris is from Huggins. **See** Brief for Harris at 9.

Notes of Testimony—Trial II ("N.T. Trial II"), 12/8/2011, at 73-74. When asked if this was an accurate description of the events that transpired, Huggins testified: "That's what happened." *Id.* at 75. Thus, Harris' claim that Huggins' testimony contains no indicia of Harris' intent to commit robbery seems much more like wishful interpretation than an objective reading of the transcript in question.

To the contrary, Huggins' representation of events clearly indicates that Harris manifested a clear intent to commit robbery. According to the statement that Huggins confirmed at trial, Harris solicited Huggins' help in obtaining money from an undisclosed source. After Huggins agreed to aid Harris, he provided Huggins with a weapon and a disguise. Harris and Huggins then forced their way inside of the home of the Decedent and Upshaw, and threatened the victims with guns. According to Upshaw's testimony at trial, Harris said, "[Y]ou know what it is, give up the money," upon forcibly entering the house. *See* Notes of Testimony—Trial I ("N.T. Trial I"), 12/7/2011, at 87. Huggins' testimony further confirms that Harris possessed the specific intent to commit robbery, specifically in his statements and actions that demonstrate the intent to obtain money through the use of force. *See* N.T. Trial II at 74-75. Additionally, both Upshaw's and Huggins' testimonies indicated that the Decedent struggled and attempted to flee rather than comply with Harris' demands. *See* N.T. Trial I at 88-91; N.T. Trial II at 74-75. Harris, in turn, shot and killed the Decedent. *Id.*

This testimony, viewed in the light most favorable to the Commonwealth as verdict-winner, is sufficient to establish that Harris committed robbery. Specifically, Harris, with the aid of Huggins, forcibly entered the home of Upshaw and the Decedent and threatened them with guns while demanding money. As our precedents indicate, the visible brandishing of a firearm is sufficient to establish that the victims were put in fear of "serious bodily injury" during the commission of a robbery. **Alford**, *supra*. Moreover, Harris' contention that he did not manifest a specific intent to commit robbery is belied by Huggins' testimony that Harris had formulated a plan prior to arriving at the home of Upshaw and the Decedent. Because this evidence is sufficient to sustain Harris' robbery conviction, Harris' claim that the Commonwealth failed to establish a predicate offense for felony murder, **see** 18 Pa.C.S. §§ 2502(b), (d), is without merit.

In his second claim, Harris challenges the weight of the evidence. In reviewing whether the trial court erred in ruling that the verdict was not contrary to the weight of the evidence, we must "review[] the [trial court's] exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." **Commonwealth v. Smith**, 985 A.2d 886, 897 (Pa. 2009) (quoting **Commonwealth v. Diggs**, 949 A.2d 873, 879 (Pa. 2008)). The jury is free to believe all, part, or none of the evidence, and an appellate court will not make its own assessment of the credibility of the evidence. **Commonwealth v. Ramtahal**, 33 A.3d 602, 609 (Pa. 2011). "The trial court will award a new trial only when the jury's verdict is so

contrary to the evidence as to shock one's sense of justice." **Id.** (quoting **Diggs**, 949 A.2d at 879-80). In turn, we will only reverse a trial court's refusal to do so when we find that it reflected an abuse of discretion for the trial court not to conclude that the verdict was so contrary to the evidence as to shock one's sense of justice. In effect, the trial court's denial of a motion for a new trial based upon a weight of the evidence claim is "the least assailable of its rulings." **Id.**

Harris has recited the proper standard of review for a challenge to the weight of the evidence. Harris has even offered an on-point citation to this Court's holding in **Commonwealth v. Lyons**, 833 A.2d 245 (Pa. Super. 2003), elucidating the distinction between challenges to the weight of the evidence and challenges to the sufficiency of the evidence:

> The distinction between a claim challenging the sufficiency of evidence and a claim challenging the weight of evidence is critical. **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence **concedes that there is sufficient evidence to sustain the verdict** but claims that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Id.** at 751-52 (internal citations omitted). A claim challenging the sufficiency of the evidence, however, asserts that there is insufficient evidence to support at least one material element of the crime for which [an appellant] has been convicted. **Id.**

**Lyons**, 833 A.2d at 258 (emphasis added); **see** Brief for Harris at 11. However, despite Harris' apparent grasp of this distinction, his substantive

- 10 -

discussion regarding his challenge to the **weight** of the evidence continues to press an argument that regards the **sufficiency** of the evidence:

> The Commonwealth came forward with no evidence that this was a [r]obbery. Thus, if one wants to assume that the jury found a robbery basing its decision no speculation, conjecture and surmise, to wit, why were [Harris and Huggins] there?—that [*sic*] would be improper and not that basis for a verdict, or at least, it would not be the basis for claiming that the greater weight of the evidence supported the verdict.

Brief for Harris at 11.

Although styling his second claim as a challenge to the weight of the evidence, Harris continues to argue that the Commonwealth failed to adduce sufficient evidence to establish that Harris committed a robbery. Such a claim properly is construed as a challenge to the sufficiency of the evidence. **See Lyons**, *supra*. To the extent that Harris relies upon a challenge to the weight of the evidence, and to the extent that he preserved that challenge in a post-sentence motion,[3] the trial court aptly addressed the issue in its Rule 1925(a) opinion:

> In the instant case, as previously stated, the Commonwealth presented sufficient evidence to sustain [Harris'] convictions. The evidence showed that [Harris] and [Huggins] conspired to rob the [D]ecedent. Thomas Upshaw positively identified [Harris] as the person he saw enter the house uninvited and tussle with the [D]ecedent. [Upshaw] saw the [D]ecedent break free from [Harris'] grip and run. [Upshaw] heard several

---

[3] Pa.R.Crim.P. 607(A) provides that an appellant wishing to assert a challenge to the weight of the evidence must raise the issue with the trial court in an oral or written motion prior to sentencing, or in an post-sentencing motion. **See** Pa.R.Crim.P. 607(A)(1)-(3).

- 11 -

gunshots following his seeing [Harris] running after the [D]ecedent. The jury found Mr. Upshaw's identification of [Harris] as the shooter credible. When viewed with [Huggins'] testimony, the verdict was not against the weight of the evidence.

T.C.O. at 13-14. We agree with the trial court's characterization of the evidence presented at Harris' trial. Furthermore, nothing in our review of the certified record and Harris' arguments leads us to conclude that the jury's verdict was so contrary to the evidence of record that it should shock the conscience. Thus, Harris' second claim fails.

Harris' third, and final, claim argues that "the [trial] court erred and abused its discretion by allowing the Commonwealth to present, through the testimony of Detective Nathan Williams, portions of a letter . . . found by police when executing a search warrant on an unrelated matter." T.C.O. at 14. Specifically, the letter in question was written by Harris and contained statements that "not only corroborated [Huggins'] testimony and statement to police, but also showed [Harris'] state of mind. The letter clearly referred to [Huggins] and his involvement in the case." *Id.* at 16-17. Harris argues that "the letter was not particular germane to [Harris' case]" and argues that it should have been excluded from trial. Harris has waived this claim.

Our standard of review in this context is well-settled.

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

- 12 -

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1253 (Pa. Super. 2011) (citation omitted).

Before addressing the merits of Harris' claim, we must assess whether Harris has properly preserved this issue for our consideration. The Pennsylvania Rules of Evidence state the following with regard to preserving challenges to the admission evidence before the trial court:

> **Rule 103. Rulings on Evidence.**
>
> (a) **Preserving a Claim of Error.** A party may claim error in a ruling to admit or exclude evidence only:
>
>> (1) if the ruling admits evidence, a party, on the record:
>>
>>> (A) makes a timely objection, motion to strike, or motion *in limine*, and
>>>
>>> (B) states the specific ground, unless it was apparent from the context

Pa.R.E. 103. This Court has further explained this requirement, as follows:

> "In order to preserve an issue for review, a party must make a timely and specific objection at trial." *Commonwealth v. Montalvo*, 641 A.2d 1176, 1185 (Pa. Super. 1994) (citation omitted). "A failure to object to an offer of evidence at the time the offer is made, assigning grounds, is a waiver upon appeal of any ground of complaint against its admission."

- 13 -

> ***Commonwealth v. Bullock***, 518 A.2d 824, 826 (Pa. Super. 1986), *alloc. denied*, 531 A.2d 427 (Pa. 1987).

***Commonwealth v. Griffin***, 684 A.2d 589, 595 (Pa. Super. 1996).

Instantly, the letter in question was admitted into evidence on December 9, 2011, which was during the third day of Harris' jury trial. ***See*** Notes of Testimony—Trial III ("N.T. Trial III"), 12/9/2011, at 129-130. Neither Harris, nor Harris' trial counsel, objected to the letter's admission. Consequently, Harris' evidentiary challenge is waived. ***Griffin***, *supra*; ***see*** Pa.R.E. 103(a)(1)(A)-(B).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2014