J-S12022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARTELL TODREK BYRD, | |
| Appellant | No. 1566 MDA 2017 |

Appeal from the Judgment of Sentence entered September 8, 2017,
in the Court of Common Pleas of Lancaster County,
Criminal Division, at No(s): CP-36-CR-0004383-2016.

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:          **FILED APRIL 11, 2018**

Martell Todrek Byrd appeals from the judgment of sentence entered against him, after a jury convicted him of robbery and terroristic threats.[1] Bryd challenges his conviction for robbery.  After review, we affirm.

The trial court set forth the relevant facts as follows:

> On August 16, 2016, at approximately 11:30 a.m., [Byrd], wearing a baseball cap and mirrored sunglasses, entered the branch of Infinity Bank located at 2055 Fruitville Pike, Manheim Township, Lancaster, Pennsylvania.  He went to the teller's station of head teller Alyssa Caputo and handed her an envelope on which was written a note, (Commonwealth's Ex. 1), which said "This is a robbery.  I am armed.  Make it fast and easy and put 5K in this envelope.  No GPS.  No dye pack.  I need 100s and 50s.  Act normal.  Try me.  I will shoot."

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and 2706(a)(1), respectively.

Ms. Caputo testified that, at the time, she read only the first two sentences of the note and, taking [Byrd] seriously, went into the locked cash drawer to her left to collect money for him. [Byrd] watched her as she collected the money; he did not speak and he did not display a weapon. As Ms. Caputo was gathering the money, she pushed the panic button located under the counter to the right at the teller's station. When pushed, the button made a noise that she described as a click, but she testified on cross examination that it was designed so the person on the other side of the counter would not be aware that the teller was pushing the button. While it would be possible for an individual tall enough to see movement, the button could not be seen. Within seconds of her pushing the button, [Byrd] turned and left the bank at a fast walk without any money.

After [Byrd] left the bank, Ms. Caputo observed the direction he had gone. She ran to the lobby and locked the door. Then she told the others in the bank what had happened and someone called the police.

Detective Nicholas Fritz of the Manheim Township Police Department testified that he responded along with other officers to the Infinity Bank and served as lead investigator of the offense. He testified that, as part of the investigation, Ms. Caputo and other witnesses were interviewed, that the police secured the note [Byrd] had left at the bank and that surveillance video of the robbery, (Commonwealth's Ex.2), was obtained from bank personnel. Detective Fritz also testified that a crime scene processor recovered a latent partial lower right palm print from the area of the counter where [Byrd] had stood and a partial latent finger print from the exterior glass on the left inside door used by [Byrd] when he entered and exited the bank.

Subsequently, [Byrd] was identified as a person of interest in the robbery and was interviewed by police on August 18, 2016. Prior to conducting that interview, Detective Fritz reviewed [Byrd's] ***Miranda*** rights with him and [Byrd] signed the form, (Commonwealth's Ex. 3), indicating that he understood his rights and was willing to make a statement and answer questions. This waiver of rights was witnessed by Detective Fritz and another detective, Steven Newman. With [Byrd's] permission, a video recording of his interview with police was made, (Commonwealth's Ex. 4), in which [Byrd]

admitted committing the robbery at the Infinity Bank branch. Additionally, [Byrd's] finger prints and palm prints were compared to the prints recovered at the crime scene. Investigators determined to a reasonable degree of scientific certainty that the palm print recovered from the bank counter matched [Byrd's] right palm and the finger print recovered from the bank door matched his right ring finger.

Trial Court Opinion, 11/28/17, at 2-4 (citations to transcript omitted).

Byrd was convicted as charged following a two-day jury trial on July 12-13, 2017. On September 8, 2017, Byrd was sentenced to a term of 4-8 years of imprisonment, and a consecutive two-year probationary term. He timely filed a notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Byrd raises one issue on appeal:

Was the evidence presented by the Commonwealth insufficient to prove beyond a reasonable doubt that [Byrd] was guilty of robbery where he did not act in a manner which would be deemed "in the course of committing a theft" as he left the bank after handing the teller a note, which constitutes a threat, but does not constitute an attempt at theft or flight after an attempt or commission?

Byrd's Brief at 6.

Essentially, Byrd argues that because he gave up on the theft after presenting the note to the teller, there was insufficient evidence to convict him of robbery beyond a reasonable doubt. We disagree.

A challenge to the sufficiency of evidence is a question of law. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 (Pa. 2000). When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner, in this case, the

Commonwealth, and to give that party the benefit of all reasonable inferences to be drawn from the evidence. ***Commonwealth v. Rahman***, 75 A.3d 497, 500 (Pa. Super. 2013) (citation omitted). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the defendant's commission thereof beyond a reasonable doubt." ***Id.***

Here, we must determine whether a sufficient basis exists for Byrd's conviction of robbery. The relevant statute provides: "Robbery: -- A person is guilty of robbery, if, in the course of committing a theft, he: threatens another with or intentionally puts him in fear of immediate serious bodily injury." 18 Pa.C.S.A. § 3701 (a)(1)(ii).

Under this statute, the Commonwealth must prove two elements beyond a reasonable doubt to sustain a conviction of robbery: 1) the defendant must act "in the course of committing a theft" and 2) the defendant must threaten another with or intentionally put him in fear of immediate serious bodily injury. ***Id***.

To satisfy the first element, we have held that no actual theft must occur for a conviction. It is not an essential element of robbery that there be a completed theft; it is enough that force was used during an attempted theft. ***Commonwealth v. Lloyd***, 545 A.2d 890, 892 (Pa. Super. 1988); ***see also Commonwealth v. Robinson***, 936 A.2d 107, 110 (Pa. Super. 2007) (finding a conviction for robbery does not require proof of an actual

theft, only that the requisite force was used "in the course of committing a theft"). The Supreme Court of Pennsylvania has also held that the crime of robbery is complete upon commission or threat of violence, and does not depend upon occurrence of a completed theft. *Commonwealth v. Thompson*, 648 A.2d 315, 319 (Pa. 1994).

Byrd argues that because he left the bank without incident, the evidence does not support a conviction for robbery. He argues "[Byrd] appears to have simply given up after presenting a note to the teller." Byrd's Brief at 11. "[Byrd] turned and left the bank without taking any money." *Id*. at 12. "There is no apparent reason as to why [Byrd] left the bank….he simply left without a word." *Id*. He believes this act of leaving negates the theft, and therefore the robbery. Notably, he cites no legal authority for this position. We reject this argument.

Byrd arrived at the bank wearing mirrored sunglasses and a baseball cap, obviously intending to hide his identity. He handed the teller a note indicating that this was a robbery, and he was armed. The teller began gathering the money Byrd demanded, while he watched her. The fact that Byrd decided to abort his mission does not change the course of events he already put into motion. By his own note, Byrd claimed it was a robbery, and now, on appeal, he argues that it was not. We find his argument disingenuous; clearly, the evidence supported the jury's conclusion that Byrd

was in the course of committing a theft, which satisfies the first element of the crime.

With respect to the second element, whether the defendant threatened another with or intentionally puts him in fear of immediate serious bodily injury, the teller testified that after receiving the note, she was "very upset" and "fearful for [her] life." N.T., 7/12/17, at 108 and 112. The trial court noted, "Further, the jury could reasonably have found that, in the course of attempting that theft, [Byrd] threatened Ms. Caputo or put her in fear of immediate serious bodily injury through the note that he presented to her." Trial Court Opinion, 11/28/17 at 5. We agree.

Viewing all evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth produced sufficient evidence to establish beyond a reasonable doubt that Byrd was guilty of the crime of robbery.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2018