Laura Kaplan, Appellant *v.* The Redevelopment Authority of the City of Philadelphia, Appellee.

Argued April 2, 1979, before Judges CRUMLISH, JR., MENCER and ROGERS, sitting as a panel of three.

*Leon W. Silverman,* for appellant.

*Lawrence S. Rosenwald,* for appellee.

OPINION BY JUDGE MENCER, July 10, 1979:

Laura Kaplan (Kaplan) appeals from an order denying a motion for a new trial in an eminent domain proceeding where a verdict of $6,000 was rendered in her favor. Kaplan was the owner of property in the City of Philadelphia which was condemned by the Redevelopment Authority of the City of Philadelphia (Authority) in 1968. The board of view, after a hearing, awarded damages to Kaplan in the amount of $9,000. The Authority appealed and, after a nonjury trial in the Court of Common Pleas of Philadelphia County, the Honorable ALEXANDER F. BARBIERI rendered a verdict of $6,000. Kaplan filed a motion for a new trial which was denied, and this appeal followed.

Our scope of review is limited. A motion for a new trial is addressed to the discretion of the trial court, based on the circumstances of the particular case, and the court's action in granting or refusing such a motion will not be reversed in the absence of a manifest abuse of discretion or a clear error of law. *Beyrand v. Kelly,* 434 Pa. 326, 253 A.2d 269 (1969).

Kaplan raises three questions on this appeal in support of her contention that the trial court abused its discretion by refusing the motion for a new trial.

The assertion is made that condemnor's sole witness testified before the trial court contrary to what he testified before the board of view concerning the number of baths and kitchens within the apartment house property, and therefore his testimony was rendered incompetent and should not have been considered by the trial court. We have examined the record carefully and must conclude that the witness in question did not change his testimony but merely clarified it before the trial court and differed in his opin-

152

ion as to whether or not certain areas of floor space could be described fairly as bathrooms.

In his original testimony before the board of view, the condemnor's witness stated that there was no equipment anywhere in the condemned property and there were only plumbing and setups for one kitchen and one bath. Subsequently, he further inspected the premises and acknowledged that the property had five kitchens and five bathrooms. When testifying before the trial court, the witness testified as follows:

Q. Now, Mr. Sengpiel, how many bathrooms were there in this house? A. I still classify it as one bathroom. Q. One bathroom? A. Yes, sir. Q. And was there equipment, as you call it, in that bathroom? A. Yes, sir. Q. It was there, was it not? A. Yes, sir. Q. Was there equipment in four other rooms that could be called in common parlance bathroom equipment? A. I'll answer it in this fashion. Going through the interior of the property with the owner in the first floor front, the owner identified a closet which was inaccessible by debris and said that that was a bath. I climbed over the debris and observed in that closet one-half of a commode in a closet. I do not classify that as a bath. He identified the kitchen by pointing to two stubs of pipe in the wallpaper and identified this as a kitchen. Where a kitchen sink was lying in a pile of other debris, he identified this as a kitchen. I asked where the ranges were and he said, 'Well, they have been moved around and I changed them from location to location.' They were in another room. We passed through the entire building observing exactly the same condition. I did not observe any one fully operable unit in the entire building. The other baths, there was another

closet operation that was exactly the same as this described with partial units in there that were not in operation and no water hookups to them. So I concluded from that in my consideration that that is a stripped unit. I hold to my testimony that there was one bath and I am not sure that the bath facilities in that one bath were still—that they were even hooked up in an operable form. So that is my clarification of my testimony. Q. Did you try them? A. I couldn't try them, the pipes were open off the walls. There were no spigots. Q. You're saying in the one bathroom where there were, as you called it, equipment, you couldn't tell whether it was operable or not? A. It couldn't be operable, there is no piping connected to it.

Our review of the record discloses that there was a conflict of testimony as between the experts and especially as to their evaluation of not only the condition and value of the property but also concerning how to fairly describe the inside of the property. This conflict of testimony did not make the testimony incompetent but merely presented to the trial judge a credibility question. It is the function of the fact-finder, here the judge sitting without a jury, to determine the credibility of and to resolve discrepancies in the testimony of expert witnesses. *Abrams, Inc. v. Redevelopment Authority*, 37 Pa. Commonwealth Ct. 343, 391 A.2d 1 (1978). Thus, we find no error in the trial court's considering the testimony of the condemnor's expert witness.

Next, Kaplan argues that we should reverse in this case because the trial court may have acted on the motion for a new trial without having vital evidence available to the court. The trial court signed an order on December 24, 1974 directing that the notes of the board of view taken at an afternoon session held

on June 12, 1969 be included in the record for the purpose of consideration by the trial court in ruling on the motion for a new trial. Unfortunately, the portion of the record available to us does not disclose whether or not these notes were ever submitted to the trial court or made a part of the record. Absent proof to the contrary, we can only conclude that, where an experienced trial judge orders items to be included in a record for consideration in ruling on a motion for a new trial, the items sought have been considered when he subsequently rules on the motion. No assumption that the items to be added to the record were not received or considered can arise from the fact that portions of the record were missing in this case when we realize that even the trial court's order under appeal here, denying the motion for a new trial, is unexplainably missing from the record transferred to us relative to this appeal.

We can only take note that, when making a ruling on a motion for a new trial where the trial lasted less than one day and the issues were not complex and the range of expert valuation testimony ranged from $3,600 to $10,900, the trial court could readily have in mind those matters necessary and relevant for a ruling on the motion.

Finally, it is contended on this appeal that the trial judge erred in refusing to grant Kaplan's request for an adjournment of the trial so that she could subpoena the members of the board of view to impeach the condemnor's expert witness. The background of the trial judge's ruling was as follows:

Q. Is it not true, Mr. Sengpiel, that when you went back to the board you told the board that you had previously examined the wrong property? A. Absolutely not.

Mr. Katz: Your Honor, unless Mr. Silverman now produces testimony— Mr. Silverman:

—I want an adjournment. I'm going to subpoena the board member. MR. KATZ: Let me finish. Unless he now produces testimony, because of the entire transcript before me, to the effect that I made any admission of that kind, I ask that that be stricken from the record, and if it was a jury, frankly, I would certainly ask for a mistrial because he has no substantiation for that question and he knows it, and it is improper questioning for any lawyer to do that. MR. SILVERMAN: Your Honor, I have a request at this time, so I would like to have this adjourned because I want to subpoena the entire board. THE COURT: Your request is denied. I am going to read the entire testimony. You are cross-examining on the basis of testimony— MR. SILVERMAN: —no, Your Honor. THE COURT: before the Board of View— MR. SILVERMAN: —that's not an accurate statement, your Honor. THE COURT: You may file a petition for retrial, if you wish, but your motion is now being denied.

. . . .

THE COURT: If you submit memorandum of members of the board supporting your position I will consider a new trial. But you may be happy with the verdict you receive, so it is maybe best to see what the verdict is before you start asking for a new trial.

A continuance need not be granted because of the absence of a witness unless it appears that the expected testimony is competent and material, not merely cumulative or impeaching, and that it is credible, would probably affect the outcome of the trial, and that due diligence has been exercised to secure the witness for trial. *Carey v. Philadelphia Transportation Co.*, 428 Pa. 321, 237 A.2d 233 (1968). Kaplan

made no such showing in this case in regard to her request for adjournment. The grant of a continuance rests in the discretion of the trial judge, and we do not deem on this record that his denial of Kaplan's request for an adjournment was an abuse of discretion. Even if it would be assumed that the trial judge erred when making this ruling, it would have been harmless error, since the notes of testimony disclose that the condemnor's witness did not inform the board of viewers that he had examined the wrong property. Only the facts that appear of record may be considered by a reviewing court. *Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258 (1974).

Our study of this case persuades us that the refusal of the trial court to grant a new trial was not an abuse of discretion or unconscionable and is not shocking to our sense of justice.

Order affirmed.

### ORDER

AND Now, this 10th day of July, 1979, the order of the Court of Common Pleas of Philadelphia County, refusing the motion for a new trial by Laura Kaplan and entered at No. 2535, July Term, 1968, is hereby affirmed.