J-S17027-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                :  PENNSYLVANIA
            v.  :
                                                  :
DAVID CRAIGE REAM  :
                                                  :
          Appellant  :  No. 1286 MDA 2020

Appeal from the Judgment of Sentence Entered September 3, 2020,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s):  CP-36-CR-0006456-2019.

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KUNSELMAN, J.:  **FILED: AUGUST 19, 2021**

David Craige Ream appeals from the judgment of sentence of 72 hours to six months' incarceration in the county jail.  Because the Commonwealth did not prove beyond a reasonable doubt that Mr. Ream was intoxicated when he drove his motorcycle,[1] we vacate the convictions and sentence.

On July 30, 2019, in the early morning hours, Mr. Ream drove his motorcycle westbound on State Route 999 in Lancaster County.  However, no one observed that drive or how his bike ended up in someone's front yard.

According to the police officer's crash report, Mr. Ream stated he drove off the roadway "at approximately 0100 hours when a deer came out of a corn field.  This caused him to swerve . . . and crash."  Commonwealth's Ex. 2, at

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court convicted Mr. Ream of driving under the influence (one count of general impairment and one count of high rate of alcohol).  ***See*** 75 Pa.C.S.A. §§ 3802(a)(1) and 3802(b).

4. The Commonwealth offered no other evidence to establish when Mr. Ream drove his motorcycle or when he became intoxicated. That said, there were no skid marks on the road, grass stains on Mr. Ream's clothing, or damage to the lawn. ***See id.***

Two-and-half hours later, around 3:32 a.m., a police officer performed an unrelated traffic stop directly across the street from Mr. Ream's motorcycle. The bike's reflectors and/or taillights appeared in the video from the officer's dashboard camera, approximately 30 yards away, behind a large tree. ***See*** Commonwealth's Ex. 1, Video File at 0:24.

As the officer was speaking with the stopped driver, Mr. Ream's legs entered the camera shot, but the large tree initially camouflaged his torso. ***See id.*** at 1:47. Mr. Ream then walked out from the tree, stood on his side of the road, and waited for the officer to take the driver's paperwork back to the police cruiser. ***See id.*** at 2:02 – 2:25. Mr. Ream walked across Rt. 999 to speak with the driver. While the audio did not record what they said, Mr. Ream and the driver spoke for approximately two minutes. ***See id.*** at 2:30 – 2:33. Mr. Ream strolled back across the roadway and disappeared into the darkness near his motorcycle.

A minute-and-a-half later, the officer returned to the stopped vehicle. ***See id.*** at 6:02. He asked the driver, "Do you know him?" Commonwealth's Ex. 1, Audio File at 6:48.

The driver replied, "No, I don't know him . . . He approached me; he just walked towards me. I was like, you know, this is an awkward place to be

approached by somebody." *Id.* at 6:50 – 6:58. The officer eventually ended the traffic stop and drove away. He soon received a radio dispatch for him to return to the same location to investigate a car accident. There is nothing of record to indicate who called 911 regarding this accident or when.

The officer returned to the same location on Route 999 between 3:40 and 3:45 am. *See* N.T., 9/3/20, at 7, 32-33. He found Mr. Ream "laying next to [his] motorcycle off to the side of the road." *Id.* at 7. The bike appeared to be laying on its side and not the result of a car accident. The officer testified there were "tire marks leading from the roadway to the point where the bike was laying." *Id.* at 8.

"Just fresh tire marks on the grass?" the prosecutor asked. *Id.*

The officer answered, "Correct." *Id.*

According to the officer, Mr. Ream immediately told him "a deer jumped out in front of him [and] he crashed his bike, because a deer jumped out in front of him while he was driving." *Id.* at 12. However, there "was no evidence of a deer [being] involved in the crash." *Id.* at 17. The officer therefore believed Mr. Ream "drove to the left of the roadway and laid his bike down." *Id.*

When the officer asked Mr. Ream if he wanted assistance, Mr. Ream said he could not lift the bike by himself. *See id.* at 13. He told the officer that his wife was coming to get him. *See id.* at 21. The officer then looked around with his flashlight. He did not find any containers of alcoholic beverages, Mr. Ream's keys, or a cellular phone.

He smelled alcohol on Mr. Ream and his eyes appeared glassy, so the officer asked him to perform various field-sobriety tests. Just prior to starting the sobriety tests, Mr. Ream's wife pulled onto the scene in a car, after a 13-minute drive from their home. *See id.* at 23. The officer believed she arrived about ten minutes after he had located Mr. Ream, around 4:00 am. *See id.* at 34.

Mr. Ream failed his first sobriety test. He then said that he could not do the other tests because of a knee injury. The officer arrested him for DUI.

Eventually, the police took Mr. Ream to a hospital. At 5:00 am, health practitioners drew and tested Mr. Ream's blood, and the police obtained a search warrant for the results. Mr. Ream had a blood-alcohol content of 0.111. *See id.* at 28. The Commonwealth charged Mr. Ream with various counts of DUI.

At the close of the prosecution's case, Mr. Ream moved for a judgment of acquittal. He argued that, although he was intoxicated on the morning in question, the Commonwealth had failed to prove beyond a reasonable doubt that he drove the motorcycle while intoxicated or within two hours of the 5:00 am blood draw. *See id.* at 37.

In response, the Commonwealth admitted, "We cannot state with exact specificity when the crash occurred." *Id.* Despite this, the trial court found as a fact that the officer "testified that the crash occurred, based on the defendant's own statement, shortly before [the officer's] arrival." *Id.* at 38.

The trial court therefore placed the crash at around 3:30 a.m. and denied Mr. Ream's motion for judgment of acquittal.

The trial court convicted Mr. Ream and sentenced him as described above. This timely appeal followed.

Mr. Ream raises two issues. They are:

1. Was the evidence . . . insufficient to prove beyond a reasonable doubt that Mr. Ream was guilty of . . . [DUI] High Rate of Alcohol [because] there was insufficient evidence that Mr. Ream had driven, operated, or been in actual physical control of the movement of the motorcycle within the two-hour timeframe prior to when his blood was drawn and tested?

2. Was the evidence . . . insufficient to prove beyond a reasonable doubt that Mr. Ream was guilty of . . . General Impairment [because] there was insufficient evidence that Mr. Ream had driven, operated, or been in actual physical control of the movement of the motorcycle after imbibing a sufficient amount of alcohol such that he was incapable of safe driving?

Ream's Brief at 5-6.

Essentially, the two issues raise the same challenge to the evidence that the Commonwealth produced. They each assert that there is nothing of record to place Mr. Ream on his motorcycle while intoxicated. We therefore address them together.

In reviewing a sufficiency-of-the-evidence claim, our standard of review is *de novo*; we must determine whether the evidence permits the trial court

to find every criminal element beyond a reasonable doubt.[2] ***See Commonwealth v. Burton***, 2 A.3d 598, 601 (Pa. Super. 2010) (*en banc*). "In doing so, a reviewing court views all the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. Furthermore, in applying this standard, the Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence." ***Id.*** "It is not within this Court's authority to re-weigh the evidence presented and substitute our own judgment over that of the fact finder." ***Commonwealth v. Shaw***, 203 A.3d 281, 284 (Pa. Super. 2019), *appeal denied*, 215 A.3d 964 (Pa. 2019).

Even so, "No man should be deprived of his life under the forms of the law unless [the evidence] is sufficient to show beyond a reasonable doubt the existence of ***every fact*** necessary to constitute the crime[s] charged." ***In re Winship***, 397 U.S. 358, 363 (1970) (emphasis added) (some punctuation omitted). When someone stands accused of a crime, he "would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence in a civil case." ***Id.***

---

[2] "Reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his or her own affairs." Pa.S.S.J.I. (Crim.), §7.01. It is essentially, "the kind of doubt that would restrain a reasonable man or woman from acting in a manner of importance to himself or herself." ***Commonwealth. v. Young***, 317 A.2d 258, 263 (Pa. 1974) (some punctuation omitted).

"The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error." *Id.* Thus, when the "evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, [the fact finder] may not be permitted to return such a finding." *Commonwealth v. Sanchez*, 36 A.3d 24, 40 (Pa 2011) (quoting *Commonwealth v. Farquharson*, 354 A.2d 545, 550 (Pa. 1976)). This is a "fundamental principle" of criminal law. *Farquharson*, 354 A.2d at 550.

Here, the Commonwealth's case is rife with speculation as to **_when_** Mr. Ream drove his motorcycle. And, in this instance, the timeline of when events occurred is absolutely critical for the Commonwealth to prove that Mr. Ream drove while under the influence. If the Commonwealth cannot establish that Mr. Ream drank prior to driving his motorcycle and was therefore drunk while driving it, the Commonwealth cannot sustain its convictions.

As mentioned above, the trial court found he last drove around 3:30 a.m. and denied his motion for judgment of acquittal. As such, the trial court based its denial of Mr. Ream's motion for judgment of acquittal upon a finding of fact that was clearly erroneous, because the record reveals that the trial court's recollection of the testimony was mistaken. The officer did **not** so testify.

This erroneous factual finding directly contradicted what the officer recorded contemporaneous with his investigation of the incident. On the

morning in question, Mr. Ream told the officer he drove "west on Route 999 at approximately **_0100 hours_**" – that is, 1:00 a.m.  Commonwealth's Ex. 2, at 4 (emphasis added).  This was over two-and-a-half hours before the officer found Mr. Ream sitting next to his motorcycle and four hours prior to the blood draw.  Thus, based upon the only evidence that the Commonwealth admitted regarding when Mr. Ream last drove his motorcycle, the record undoubtedly reflects that he last drove and crashed his bike at 1:00 a.m., not 3:30 a.m.  The officer did not interact with Mr. Ream or begin to suspect that he was drunk until around 3:40 a.m.

With this chronology in mind, we turn to the two offenses for which the trial court convicted Mr. Ream.

First, the trial court convicted him of DUI (high rate of alcohol).  In order for Mr. Ream to have committed this offense, he needed to have a BAC of "at least 0.10% but less than 0.16% **_within <u>two</u> hours after_**" driving his bike.  75 Pa.C.S.A. § 3802(b) (emphasis added).

The hospital took Mr. Ream's blood at 5:00 a.m. on the morning of the incident. Thus, the Commonwealth needed to prove beyond a reasonable doubt that he drove his motorcycle after consuming alcohol and between 3:00 a.m. and 5:00 a.m.  Other than Mr. Ream's statement that he crashed his bike at 1:00 a.m., there was no evidence showing when he last drove or operated his motorcycle.

The closest the Commonwealth came to producing such evidence was when the prosecutor asked the officer about the tire tracks Mr. Ream had

made in the lawn and used the adjective "fresh" to describe them. N.T., 9/3/20, at 9. The officer agreed with that description, but the Commonwealth failed to develop this line of questioning further.

Hence, the tire tracks neither establish when Mr. Ream drove through the yard nor sufficiently prove that he did so between 3:00 a.m. and 3:30 a.m. Mr. Ream could have made the tire marks at 1:00 a.m., as he told the officer. Even viewing them in the light most favorable to the Commonwealth, the tire tracks alone are not the level of proof that the law requires for criminal convictions. **See In re Winship**, **supra**. They leave room for reasonable doubt. At most, the Commonwealth offered proof that Mr. Ream more likely than not drove off the road between 3:00 a.m. and 3:30 a.m.

Accordingly, the Commonwealth did not sufficiently prove that Mr. Ream drove or operated his motorcycle "within two hours" of the blood draw.[3] 75 Pa.C.S.A. § 3802(b). The trial court therefore erred by denying his motion for judgment of acquittal on the first DUI count for high rate of alcohol.

Second, the trial court convicted Mr. Ream of DUI (general impairment). In Pennsylvania, a person "may not drive, operate, or be in actual physical control of the movement of the vehicle, **after** imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating, or being in actual physical control of the movement of the vehicle."

---

[3] We also note that there is a good-cause exception to the two-hour window for a blood draw. **See, e.g., Commonwealth v. Benvenisti-Zarom**, 229 A.3d 14 (Pa. Super. 2020). The Commonwealth did not claim that exception applies to Mr. Ream's case at trial or on appeal.

75 Pa.C.S.A. § 3802(a)(1) (emphasis added). Thus, to convict a person of this offense requires proof, beyond a reasonable doubt, that the defendant was drunk **while** he drove on a highway of the Commonwealth.

Again, the Commonwealth has failed to prove the time element of this offense. The prosecutor stated, "We cannot state with exact specificity when the crash occurred." N.T., 9/3/20, at 37. In fact, the only evidence the Commonwealth offered regarding when Mr. Ream drove his motorcycle, was Mr. Ream's statement that he crashed at 1:00 a.m. The Commonwealth cannot account for the missing hours between 1:00 a.m. and 3:33 a.m. It therefore cannot prove beyond a reasonable doubt that the Mr. Ream had consumed enough alcohol to render himself incapable of safe driving **while** he drove down Route 999, as opposed to consuming it **after** the crash.

Tellingly, in response to this issue, the Commonwealth does not rely on the strength of its own evidence to contend that we uphold the conviction. Instead, it argues Mr. Ream's defense was incredible. **See** Commonwealth's Brief at 10-11. The Commonwealth claims Mr. Ream's "recollection of events [*i.e.*, his alibi] simply does not make sense." **Id.** at 11.

The veracity of Mr. Ream's defense is irrelevant to the sufficiency of the Commonwealth's *prima facie* case to establish its case-in-chief. We remind the Commonwealth that Mr. Ream was not obliged to present any defense at all, much less a defense that the trial court deemed credible. **See** U.S. Const. amnd V; **see also** Pa. Const. art I § 9.

Thus, the Commonwealth impermissibly attempts to shift the burden of proof to the defendant. It seeks to sustain Mr. Ream's conviction based upon the deficiency of his defense, rather than the sufficiency of the prosecution's evidence. However, "the burden of proving defendant's guilt beyond a reasonable doubt never shifts . . . ." *Commonwealth v. Bryson*, 120 A. 552, 555 (Pa. 1923). The Commonwealth may not ask Mr. Ream to prove his own innocence in this manner.

The trial court adopted a similar, unconstitutional, burden-shifting approach in its Rule 1925(a) Opinion. *See* Trial Court Opinion, 12/15/20, at 7-9. Its analysis erroneously focuses upon what it perceived as shortcomings in Mr. Ream's version of events. But the trial court is silent as to what evidence the Commonwealth produced to show when Mr. Ream drove his motorcycle, relative to when he consumed alcohol. The fact that the officer observed Mr. Ream's blood-shot, glassy eyes; slurred speech; and his failed sobriety tests at 3:45 a.m. does not establish that Mr. Ream was intoxicated *when* he drove his motorcycle. The officer had no idea when the bike was last in operation upon a highway of the Commonwealth or whether Mr. Ream was then so intoxicated as to be incapable of safe driving.

Hence, the trial court erred by denying Mr. Ream's motion for judgment of acquittal on the second count of DUI (general impairment), as well. The Commonwealth did not produce proof, beyond a reasonable doubt, that Mr. Ream drove his motorcycle "*after* imbibing a sufficient amount of alcohol such that [he was] incapable of safely driving, operating, or being in actual physical

control of the movement of the vehicle." 75 Pa.C.S.A. § 3802(a)(1) (emphasis added).

Judgment of sentence vacated. Order denying motion for judgment of acquittal on counts one and two reversed. Mr. Ream discharged.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/19/2021