J-A12024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANIEL DIMARZIO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROSARIO DIMARZIO | : | No. 3041 EDA 2024 |

Appeal from the Order Entered October 7, 2024
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2021-19435

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.: **FILED AUGUST 4, 2025**

Appellant, Daniel DiMarzio ("Father"), appeals from the October 7, 2024 order that awarded Rosario DiMarzio ("Mother") sole legal and primary physical custody of the parties' children, twelve-year-old M.D. and nine-year-old M.D. (collectively, "Children"), and restricted Father to supervised visitation with Children. Father challenges certain evidentiary rulings and the weight of the evidence with regards to the trial court's consideration of the 23 Pa.C.S. § 5328 custody factors. Upon careful review, we affirm.

The following factual and procedural history is relevant to this appeal. Mother and Father ("Parents") were never married but lived together until July 2021 when the following incident prompted Mother to file a protection from abuse ("PFA") petition against Father. When Mother returned home from nursing school, Father began questioning her about where she had been,

followed her into bathroom, grabbed and shook her, called her derogatory names, threw her into the bathroom wall, choked her, and placed her in a headlock. Father's actions caused Mother to have bruising on her arms, legs and back. On July 27, 2021, the trial court issued a temporary PFA order. Commonwealth charged Father criminally, and he entered a negotiated guilty plea to four counts of Disorderly Conduct and served one year of probation.

On November 1, 2021, Parents agreed to a custody order which granted both shared legal custody, Mother primary physical custody, and Father partial physical custody every Sunday during the day and Tuesday, Thursday, and Friday after school until 6:00 PM. On August 1, 2023, Parents agreed to a custody order that awarded Mother sole legal custody, eliminated all telephone contact between Father and Children, and continued the requirement that all custodial exchanges be done curbside with only Children exiting the vehicle or home.

On June 21, 2023, after a hearing, the court granted Mother's PFA petition and issued a final PFA order against Father until 2026.[1]

On October 31, 2023, Parents agreed to another custody order which granted Mother sole legal and primary physical custody and allowed Father to have visits with Children on Wednesday and Thursday from 4:15 PM to 6:30 PM as well as one overnight visit every other weekend. Order, 10/31/23, at

---

[1] The final PFA hearing was continued on several occasions due to Father's pending criminal charges.

¶ 2, 3. The order also reiterated that Mother has sole decision-making authority but allowed Father to have online access to the Children's education records via the school district online portal. *Id.* at ¶ 2. Finally, the order barred telephone calls but stated, "Children may text message Father. Father must not pressure them to do so. Check-in style text messages on Father's non[-]custodial weekdays, only." *Id.* at ¶ 5.

On April 11, 2024, Father filed a petition to modify custody seeking shared legal and physical custody of Children. The court held a protracted hearing on July 23 and August 28, 2024. The court heard testimony from Mother, Father, and Children.

On October 7, 2024, after considering the Section 5328 custody factors, the trial court denied Father's petition and entered an order imposing supervised visitation on Father.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues for our review:

A. Whether the trial court erred as a matter of law in ordering that Father's custodial time be supervised where in all prior orders of custody Father's custodial time with the minor children was unsupervised and Mother did not request supervision.

B. Whether the trial court abused its discretion in ordering that Father's custodial time be supervised when no evidence was presented at trial to sustain a finding that supervision is required as between Father and [C]hildren. Specifically, the trial court found that "supervised physical custody is required and is in the best interest of [C]hildren due to the violence perpetrated by Father against Mother and Father's disregard

- 3 -

for prior custody orders and Mother's legal custody of [C]hildren."

C. Whether the trial court abused its discretion in entering an order of custody that is punitive in nature and not in accord with the facts and evidence presented at trial, namely, that the order of custody of October 7, 2024, placed more restrictions on Father's custodial rights and divests him of any opportunity of continuing his parental relationship with [C]hildren in any meaningful fashion:

  1. All vacation is with Mother;
  2. All holidays are with Mother; and,
  3. Father is to have no telephone calls with [C]hildren while in Mother's custody.

D. Whether the trial court erred as a matter of law and abused its discretion in precluding Father from testifying or offering evidence regarding events prior to October 31, 2023.

Father's Br. at 13-14 (some capitalization omitted; reordered for ease of disposition).

This Court reviews a custody determination for an abuse of discretion, and our scope of review is broad. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014). This Court will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *In re K.D.*, 144 A.3d 145, 151 (Pa. Super. 2016). This Court must accept the findings of the trial court that the evidence supports. *S.W.D.*, 96 A.3d at 400. Importantly, "[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). We can interfere only where the "custody order is manifestly unreasonable as shown by the evidence of

record." **Saintz v. Rinker**, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Further, in a custody case, relief is not warranted unless the party claiming error demonstrates that they suffered prejudice from the error. **J.C. v. K.C.**, 179 A.3d 1124, 1129-30 (Pa. Super. 2018).

Pennsylvania law provides that the trial court is only empowered to change an existing custody order if the modification will "serve the best interest of the child." 23 Pa.C.S. § 5338(a). Indeed, when reviewing child custody matters, our "paramount concern and the polestar of our analysis" is the best interests of the child. **Saintz**, 902 A.2d at 512 (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well-being." **D.K.D. v. A.L.C.**, 141 A.3d 566, 572 (Pa. Super. 2016) (citations omitted). "Common sense dictates that trial courts should strive, all other things being equal, to assure that a child maintains a healthy relationship with both of his or her parents, and that the parents work together to raise their child." **S.C.B. v. J.S.B.**, 218 A.3d 905, 916 (Pa. Super. 2019). Moreover, "[i]n any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent" and no preference based upon gender. 23 Pa.C.S. §§ 5327(a), 5328(b).

Notably, the Custody Act provides that the trial court "shall determine the best interest of the child by considering all relevant factors," including those enumerated in Section 5328(a), and requires the trial court to give

"substantial weighted consideration to the factors . . . which affect the safety of the child." 23 Pa.C.S. § 5328(a). Specifically, the trial court is compelled to give "substantial weighted consideration" to:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

*Id.* at § 5328(a)(1)-(2.2). The court must then "delineate the reasons for its decision[.]" *Id.* at § 5323(d).

In his first three issues, Father avers that the trial court abused its discretion when it restricted his contact with Children to supervised visitation. Father argues that supervised visitation "is neither required nor in the best interest of [C]hildren" and the record does not support a finding that Father poses a threat of harm to Children. Father's Br. at 23, 25. Father further argues that the trial court improperly considered the transcript from the PFA hearing. *Id.* at 27. Father contends that the trial court should have placed greater weight on his testimony, in which he denied abuse towards Mother, and emphasizes that he testified that it was Mother who was physically abusive to him. *Id.* at 29. Father also asserts that the trial court should have placed more weight on Children's testimony that they would like to spend

more time with Father and twelve-year-old M.B.'s testimony, in which she denied that she witnessed abuse between Parents. *Id.* at 28-29. Finally, Father argues that the custody order is punitive in nature because it prevents him from having a parental relationship with Children.[2] *Id.* at 33-34. Upon review, we discern no abuse of discretion.

In issuing its October 7, 2024 custody order the trial court considered the Section 5328 custody factors, and gave substantial weighted consideration to factors 1, 2, 2.1, and 2.2., all of which the court found to weigh in favor of Mother. In considering factor 1, the court credited Mother's testimony that Father and "has been both aggressive and physically abusive toward Mother in the presence of [] Children" but that Father has not physically harmed Children. Custody Order, 10/7/24, at 1. In considering factor 2, the court considered the transcript from the PFA hearing and Mother's testimony that when she returned home from work as a nurse, Father began questioning Mother in a jealous manner about where she had been, followed her into the bathroom, called her derogatory names, threw Mother into the bathroom wall and choked her by placing her in a headlock, inflicted bruises on Mother's arms, legs, and neck, and caused Mother to have severe back pain. *Id.* at 2.

---

[2] Father also improperly argues facts that do not appear in the record to support his arguments. Father's Br. at 28. It is axiomatic that this Court "may consider only the facts which have been duly certified in the record on appeal." Pa.R.A.P. 1921 note (citing *Commonwealth v. Young*, 317 A.2d 258, 264 (Pa. 1974)).

In considering factor 2.1, the court credited Mother's testimony that since 2021 Father has called in over ten reports to the Office of Children and Youth (OCY) against Mother, Children had to constantly be interviewed by OCY and the police, causing them stress, and none of the reports were founded. *Id.* at 3. The trial court further credited Mother's testimony that, as a result, nine-year-old M.B. cries and vomits when he sees a police car. *Id.* In considering factor 2.2, the trial court credited Mother's testimony that Father is aggressive and abusive in front of Children and that, even though Father has not been abusive to Children, Mother worries about Children's safety and what Father will do next. *Id.*

The trial court also found that Father exhibited "psychologically controlling behavior toward Mother and Children." Trial Ct. Op., 12/4/24, at 7. The trial court credited Mother's testimony that Father attempted to revoke her nursing license by making false allegations against her; that Father harasses her through Our Family Wizard, which is Parents' court-ordered communication platform, and sends numerous disparaging messages; that Father has been improperly interfering in Children's medical care and education and often contacts doctors and the Children's school even though he does not have legal custody of Children; and that Father took twelve-year-old M.B. to get contacts against Mother's consent. *Id.* at 7-8.

Upon review, the record supports the trial court's findings. We acknowledge that the trial court heard conflicting testimony, but we decline to reweigh the evidence or usurp the trial court's credibility determinations. The

trial court considered the Section 5328 custody factors and gave weighted consideration to those custody factors concerning safety. The court considered that there was an active PFA against Father, credited Mother's testimony that Father was abusive and aggressive towards Mother in the presence of Children, and credited Mother's testimony regarding Father's psychologically controlling behavior in making the OCY reports. We discern no abuse of discretion.

Father's argument that the trial court should not have considered the PFA transcript lacks merit. Section 5328 requires the trial court to consider "present and past abuse" including past PFA orders. This court has found that a trial court's decision to incorporate testimony from a prior hearing between the parties "is an intelligent and efficient way to proceed, particularly when the same trial judge presided over the prior hearings." *Jones v. Jones*, 884 A.2d 915, 916-17 (Pa. Super. 2005). Here, where the PFA hearing involved the same parties and the same judge, it was not an abuse of discretion for the trial court to consider the testimony from the PFA transcript.

Moreover, Father's assertion that the custody order is punitive in nature and deprives him of all meaningful contact with Children is unavailing. On the contrary, as discussed above, the trial court considered all of the Section 5328 custody factors and gave weighted consideration to the factors regarding Children's safety. The trial court fashioned an order that allowed visitation but ensured Children's safety by granting Father supervised physical custody of Children every other Saturday from 10:00 AM until 6:30 PM and every

Thursday from 4:15 PM until 6:30 PM. The order also allows Children to text message Father at their discretion but precludes telephone and video calls after the trial court credited Mother's testimony that Father was using video chats to view Mother's home and spy on her rather than a means of communication with Children. Trial Ct. Op. at 11.

Finally, in both his Rule 1925(b) statement and the fourth issue in his brief to this Court, Father avers that the trial court abused its discretion "in precluding Father from testifying or offering evidence regarding events prior to October 31, 2023." Rule 1925(b) statement; Father's Br. at 30.

In its opinion, the trial court found that this issue is too vague to address because Father fails to identify what purported evidence or testimony the court excluded. Trial Ct. Op. at 9. Accordingly, the trial court asserts that the issue should be waived on appeal pursuant to Pa.R.A.P. 1925(b)(4)(ii) and (vii) (requiring the Rule 1925 statement to "concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge" or face waiver). We agree.

Not only does Father fail to explain what testimony or evidence he is referencing, he also fails to cite where this issue was preserved as required by Pa.R.A.P. 2117(c). Moreover, upon review, the parties agreed at the outset of the July 23, 2024 hearing, that testimony and evidence would be limited to allegations after the entry of the parties' October 31, 2023 custody order. *See* N.T. 7/23/24 at 3. In his brief, Father pivots his argument and asserts that the trial court unfairly restricted his testimony to events after October 31,

2023, but allowed Mother to testify to events prior to October 31, 2023. Father's Br. at 31-32. Because Father raises this argument for the first time on appeal, we find it to be waived. *See* Pa.R.A.P 1925(b)(4)(vii) ("Issues not included in the [s]tatement . . . are waived."); Pa.R.A.P 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

In sum, the trial court thoroughly considered all the Section 5328 custody factors prior to its custody award and gave substantial weight to those factors affecting the safety of Children. The record supports the trial court's findings. Accordingly, we find no abuse of discretion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>8/4/2025</u>